Keith THOMAS a/k/a Keith Brown, et al., Plaintiffs,

v.

YONKERS POLICE DEPT. TRANSPORTATION UNIT, WESTCHESTER COUNTY DEPT. OF CORRECTIONS; Jackson Norwood, Commissioner; Joseph M. Stancari, Chief of Operations; Robert L. Davis, Associate Warden, Defendants.

No. 92 Civ. 9109 (VLB).

United States District Court, S.D. New York.

April 2, 1993.

Keith Thomas, pro se.

Antoinette McCarthy, Asst. County Atty., White Plains, NY, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case involves a *pro se* complaint based on 42 USC § 1983 alleging that two named and sixteen (16) unnamed prisoners were held for ten hours handcuffed by Yonkers and Westchester authorities for no valid reason; plaintiffs do not appear to know the names of those directly involved and have instead sued the relevant agencies and supervisory officials. The complaint was served by United States Marshals since the plaintiffs are incarcerated and actual notice was received by the defendants.

Defendants move for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (6). See Preliminary Statement, Memorandum of Law in Support of Defendants' Motion to Dismiss, Dkt. No. 4.[1]

Lack of personal jurisdiction over the County of Westchester is asserted based on absence of proper service of process as called for by N.Y.Civ.Prac. Law & Rules § 311(4)

---

1. While summary judgment under Fed.R.Civ.P. 56 is mentioned, no affidavits based on personal knowledge or factual details other than an erroneous statement that the complaint alleges three (3) rather than ten (10) hours of handcuffed detention, is provided. There is thus inadequate factual development to permit me to grant or deny or even meaningfully consider a motion for summary judgment at this juncture. See *Maho-ney v. Hankin*, 844 F.2d 64 (2d Cir.1988); *Goddard v. Urrea*, 847 F.2d 765 (11th Cir.1988). Under these circumstances, I treat the reference to Fed.R.Civ.P. 56 as solely intended to leave open treatment of the motion to dismiss as a summary judgment motion under Fed.R.Civ.P. 12(b)(6) rather than as an independent motion under Fed.R.Civ.P. 56.

as applicable pursuant to Ped.R.Civ.P. 4(d)(6). The state statute calls for "delivery of the summons to the chairman or clerk of the board of supervisors, clerk, attorney or treasurer."

Defendants move to dismiss the complaint in its entirety based on lack of specific allegations against the named defendants, and because of that lack, absence of personal misconduct which can in turn be attributed to the institutional defendants or can show lack of training or policy guidance at the institutional level.

For reasons which follow, I deny the motion to dismiss. Defendants may, should it be justified, file a motion for summary judgment under Fed.R.Civ.P. 56 without further leave after making the disclosures outlined in part IV below.

## II

The objective of service of process is to insure actual notice. See *Connecticut v. Doehr,* — U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). Actual notice to all defendants is conceded here.

■■■ Under Fed.R.Civ.P. 61 and 28 U.S.C. § 2111, harmless error is to be disregarded. The harmless error principle is applicable to matters of constitutional dimension. See *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). *A fortiori* it necessarily applies to formal matters such as compliance with detailed methods of service of process, provided always that *actual notice is provided* and that there is an adequate connection between the proposed locale of the litigation and the defendants.

■■■ These elements are uncontested here. No prejudice to the County was caused by failure to deliver the summons in this case to the particular officials named. No significant purpose would be served by dismissing this case and requiring re-service.

Full recognition of the principle laid down in Fed.R.Civ.P. 61 is important to the objectives set forth in Fed.R.Civ.P. 1 that the Federal Rules "be construed to secure the just, speedy, and inexpensive determination of every action."

Were the contrary the case, sophisticated and better funded litigants with what then future Chief Justice Taft called "the longer purse," would secure an unfair technical advantage over natural persons without extensive legal resources. See Taft, *The Delays of the Law,* 18 Yale L.J. 18, 35 (1908). The historic background underlying the adoption of Rule 61 in the Federal Rules of Civil Procedure in 1938 is reflected in complaints about the former situation in, e.g., Eliot, *Inefficiency in the Administration of Justice,* 49 American L.Rev. 171, 185 (1915):

> ... there is not only too much hard and fast rule in procedure, but the rules are treated too much as giving procedural rights to parties which they are entitled to vindicate although their substantive rights may not be affected.

Similarly, Elihu Root pointed out in an address of August 19, 1915 entitled *Scandal of the Law's Delays,* reprinted in E. Root, *Addresses on Government and Citizenship* 177, 181 (1916):

> [The citizen] may be right in his claim for justice, and ... may be wrong in ... practice. Each of these [procedural] rules is good enough, but all taken together result in a [citizen] being tangled in the form, denied ... rights ... we need to bring our judicial procedure back to the simple basis of a plain, honest citizen's intelligence.

Root further stated:

> We have got our procedure regulated according to the trained, refined, subtle, ingenious intellect of the best practiced lawyers, and it is all wrong.

Id. 231 (address of Oct. 15, 1915).

Absent the harmless error rule of Fed. R.Civ.P. 61, or a similar concept which could be inferred from Fed.R.Civ.P. 1, sentence 2, constitutional questions under the equal protection as well as due process clauses might

have to be confronted where procedural technicalities serving no discernable legitimate purpose are invoked as barriers to claims under federal civil rights statutes.

The County's challenge to service must be rejected on another ground as well. Plaintiffs, incarcerated, were and are unable to make better service, and instead relied on an official agency of the United States, which provided actual notice. Where a party does all that the party can do, and where there is no actual prejudice to the adversary, the steps taken can be treated as sufficient. *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Ortiz v. Cornetta*, 867 F.2d 146 (2d Cir.1989). The "do all that you can do" principle applied by the Supreme Court in *Houston* can be applied without hesitation here because of the clear presence of actual notice.

■ Further, the federal courts are especially vigilant to insure that alleged infractions of the Fourteenth Amendment are not derailed because of failure to fulfill formalistic state or local notice requirements where these would serve as a barrier to claims under 42 U.S.C. § 1983 rather than as an assurance of actual notice. *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). The *Felder* principle, which protects implementation of the Fourteenth Amendment from defeat by state procedural technicalities flows from the broader concept that federal claims in general cannot be defeated by technical state procedural objections. *Staub v. City of Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); see also generally *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Here the state ground is inadequate to defeat implementation of federal law; no reason has been suggested for requiring delivery to a particular person of a summons addressed to an institutional entity, where the institutional entity has a regular office and receives actual notice.

A contrary position in cases involving public sector entities would not be "worthy of our great government,"[2] which includes both state and federal segments.[3] Significantly, defendants' memorandum of law (Docket #4) cites no federal decisions invalidating service of the type involved here.[4]

### III

■ The complaint fails to indicate the specific roles of the individual defendants in the alleged wrongdoing and the responsibility of municipal or county authorities at the policy level. These matters, however, would undoubtedly have been alleged on information and belief in a complaint drafted by counsel.

Even in a *pro se* case, facts known to and alleged by the pleader must be enough to support an allegation on information and belief, whether or not properly articulated as such, in order for a lawsuit to go forward. Here, the complaint states that eighteen prisoners were held handcuffed for ten hours; absent a proper reason for such a situation, a permissible inference might be drawn of deliberate impropriety or disregard of liberty interests on the part of the responsible officials and institutions.

In this context, I treat the *pro se* complaint as alleging the legal conclusions which a complaint drafted by counsel would set forth based on the observational facts set forth. See *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

More than the ten-hour period of handcuffing of plaintiffs would have to be shown for plaintiffs to prevail. Intentional or reckless disregard of the rights of plaintiffs would have to be shown, as opposed to unavoidable difficulties or even negligence; in the case of

---

**2.** *United States v. Sears, Roebuck & Co.*, 778 F.2d 810, 818 (D.C.Cir.1985), quoting *Brandt v. Hickel*, 427 F.2d 53, 57 (9th Cir.1970)

**3.** As stated in *The Federalist* No. 82 (Hamilton), "the national and State systems are to be regarded as ONE WHOLE." (Capitalization in original).

**4.** To the extent that service is characterized as "jurisdictional," the characterization rests primarily on the need for actual notice and for adequate connection between the defendant and the situs of the suit as necessitated by applicable statutes and due process. The term itself is not talismanic. "Jurisdiction is not a unitary concept." *Apostol v. Gallion*, 870 F.2d 1335, 1337 (7th Cir.1989).

the institutional defendants, it would be necessary to show malfeasance at the policy level. The complaint does not allege these elements.

Failure at this time to provide factual support for essential elements of the type necessary for plaintiffs ultimately to prevail does not justify dismissal at the present juncture. Where those accused of constitutional wrongdoing are in a position to furnish information as to what happened in connection with an alleged incident which suggests the possibility of illegal conduct, dismissal of the complaint at the outset, could result in denial of justice. In such circumstances, at least limited discovery sufficient to shed light on whether there is a basis for the complaint may be permitted prior to a ruling as to dismissal. See *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir.1988).

It is not necessary for the identity of critical actors to be known for a complaint to proceed where the allegations—including inferences which might be drawn from facts alleged—would indicate a federal violation by someone. *Dayse v. Schuldt*, 894 F.2d 170, 173–74 (5th Cir.1990); see also *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Whether the actual facts—as distinct from those already known to plaintiffs—will show a violation of the Fourteenth Amendment or conduct remediable under 42 U.S.C. § 1983 may be tested on a motion for summary judgment pursuant to Fed.R.Civ.P. 56 once such discovery as necessary for that purpose has been had.

## IV

My denial of the present motion to dismiss the complaint does not mean that unlimited discovery must be authorized at this juncture. Instead, disclosures designed to indicate whether or not the complaint should survive may be ordered. Sustaining the complaint as against the current preliminary motion solely because of imputed allegations on information and belief is in some ways akin to permitting intervention, which can be conditioned on procedural dispositions designed to avoid what might otherwise be abuse of the litigation process. See *String-*

*fellow v. Concerned Neighbors*, 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987).

I direct that defendants furnish to plaintiffs copies of all incident reports, grievances, executive correspondence and other papers of any kind relating directly or indirectly to the transportation of Keith Thomas a/k/a Keith Brown, Kevin Terry or others transported in the same vehicle on October 14, 1992, together with copies of any guidelines, contract provisions, instructional outlines, training circulars, policy statements, directives or similar documents pertinent to such transportation.

After production of such documents, defendants may, if appropriate, file without further leave a motion for summary judgment pursuant to Fed.R.Civ.P. 56 based on affidavits and attached materials.

## V

The complaint in this case, while devoid of details as to many matters, contains demands for large amounts of money, including punitive damages. Defendants point out that the present complaint does not contain explicit allegations sufficient to support the punitive damages sought by plaintiffs, and that such damages are not ordinarily recoverable against a municipality. See *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Fed.R.Civ.P. 54(c) provides that the court shall grant whatever redress, if any, to which the parties are entitled. A pleaded prayer for relief only becomes dispositive if a default judgment is obtained, in which event the prayer limits the relief to that sought in the complaint.

■ The general federal question jurisdictional statute (28 U.S.C. § 1331) does not now contain any monetary threshold, nor does 42 U.S.C. § 1983 require that any dollar amount be claimed or shown to be due. Except in cases where jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and in cases under specific statutes not involved here, no monetary amount need be claimed for a complaint to proceed.

Thus plaintiffs' prayer for relief need not be evaluated for purposes of the current phase of this litigation.

In some instances, a prayer for relief may also be utilized to secure publicity or to force a business or other entity to disclose large asserted potential monetary liabilities in detrimental ways, for the purpose of coercing a settlement. See Fuld, "Lawyers' Responses to Auditors," 44 Bus.Law. No. 1 at 159 (Nov. 1988).

▇ Such uses of the prayers demanding large sums of money or seeking other relief without factual support may be sanctionable under Fed.R.Civ.P. 11. *Hudson v. Moore Business Forms*, 827 F.2d 450, 456–58, *modified* 836 F.2d 1156 (9th Cir.1987). In the present case, however, there is no indication that the monetary demands contained in the complaint have any impact on defendants. Plaintiffs as *pro se* litigants may have been unaware of the necessity for support for inclusion of monetary figures in prayers for relief, thus making a reprimand (*Roberts v. Lyons*, 131 F.R.D. 75 [E.D.Pa. 1990] ) inappropriate should the prayer in the complaint lack support. Plaintiffs have filed papers supporting their eligibility for *in forma pauperis* treatment; there is no suggestion that plaintiffs are in a position at this stage to pay any monetary sanctions if appropriate and if imposed.

There appears to be no necessity to examine the appropriateness of any of plaintiffs' prayers for relief at this stage.

SO ORDERED.